**Gary H. PLUMMER, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. F–73–220.**

Court of Criminal Appeals of Oklahoma.

Oct. 16, 1973.

T. Logan Brown, Miami, for appellant.

Larry Derryberry, Atty. Gen., Robert McDonald, Asst. Atty. Gen., for appellee.

## OPINION

BUSSEY, Judge:

Appellant, Gary H. Plummer, hereinafter referred to as defendant, was charged, tried and convicted in the District Court of Ottawa County, Case No. CRF–72–377, for the offense of Second Degree Burglary, his punishment was fixed at two (2) years imprisonment and from said judgment and sentence, a timely appeal has been perfected to this Court.

At the trial Faye Feezell testified that on August 5, 1972, she was the manager of the Budweiser Bar in Picher; that sometime that night the police officers took her to the bar whereupon she discovered that the lock had been broken off of the door of the bar. Upon entering, she

ascertained that between three and three and half cases of beer were missing.

Wayne Smith, age seventeen, testified that on the evening in question he, Ricky Thomas and Richard Hart were walking down a road after having been to a carnival in Commerce; that Norma Gourd and defendant picked him and his companions up and went to Norma's house in Picher. He testified that on the way they stopped and defendant bought some beer at a bait shop. They stayed at Norma's house for approximately an hour and a half drinking beer and talking. He, defendant, Norma Gourd and Ricky Thomas left the house to go get some cigarettes. As they were returning to her house, defendant pulled over on 4th Street and said "he wanted to break into that bar." (Tr. 29) They went over to the bar and defendant sent him back to the car to get a tire tool. He attempted to break the lock off and defendant told him that he wasn't doing it right and to give the tire tool to him. He handed defendant the tire tool and walked around the building. When he returned to the front, the lock had been broken off. He, defendant and Ricky Thomas entered the bar and took approximately two cases of beer to defendant's car. The beer was taken to Norma Gourd's house and put in her refrigerator. They stayed at the house for approximately ten minutes and as they were returning to Commerce, were stopped by the police officers.

Norma Gourd testified that on the evening in question she was with the defendant in Commerce in a 1959 Plymouth. They stopped and picked up Dick Hart, Rick Thomas and Wayne Smith and went to her house. They stayed at the house for approximately two hours until they left to get some cigarettes. Someone said "There's a place to get some beer" and they stopped near the bar. Defendant, Rick Thomas and Wayne Smith got out of the car and later returned with some beer, which they took to her house and put in her refrigerator. As they left her house the second time, they were stopped by the police.

Richard Hart, age sixteen, testified that he, Rick Thomas and Wayne Smith were walking towards Thomas' house on the evening in question when they were picked up by Norma Gourd and defendant. Defendant stopped at a bait shop and bought some beer and they went to Norma Gourd's house. Norma, Wayne, Ricky and defendant left the house to purchase some cigarettes. When they returned they had "a whole table full of beer," which was placed in the icebox.

Kenneth Coach testified that on November 5, 1972, he was employed as a police officer with the City of Picher and testified that about 11:00 or 11:30 p. m. he observed an old model Dodge or Plymouth sitting just west of the Budweiser Bar containing only a girl and a boy. Shortly thereafter he observed that the lock had been broken on the door of the bar. Later that evening he and other officers went to Norma Gourd's house and were invited in by a babysitter. He observed State's Exhibit 1, the beer, in the refrigerator. After later obtaining Norma Gourd's permission, he returned to her house and recovered the beer.

M. L. Morgan testified that on the evening in question he was the Chief of Police in Picher, Oklahoma. As he was returning to town from a meeting in Miami, he was stopped by officers who informed him about the burglary of the bar. After receiving information from the officers concerning a vehicle, he stopped a 1959 Plymouth four-door sedan. After stopping the car, he walked approximately fifty yards to the bar and observed that the lock had been forced open with an instrument the size of a tire tool. He told the deputy to take the occupants of the car, the defendant and the others, to the police station. He and the other officers went to Norma Gourd's house and were admitted by the babysitter where they observed the beer in the kitchen. He returned to the police station and obtained permission from Norma to recover the beer from the house. He denied making threats to Norma that they would take her baby away from her if

she refused to give them permission to search the house.

Defendant did not testify nor was any evidence offered in his behalf.

■ The first proposition asserts that the trial court erred in admitting certain evidence obtained by an illegal search and seizure of Norma Gourd's house. We need only observe that the record is totally devoid of any evidence indicating that defendant had a proprietary right or interest in the residence in question nor was the defendant a person against whom the search was directed. In Hill v. State, Okl.Cr., 500 P.2d 1080, we stated that in *Alderman*[1] the Supreme Court of the United States held that co-conspirators or co-defendants who had no possessory interest in the premises searched could not assert their standing to object to an illegal search unless they were the person against whom the search was directed. The court in limiting the exclusionary rule stated:

" '* * * suppression of the product of a Fourth Amendment violation can be successfully urged only by those whose rights were violated by the search itself, not by those who are aggrieved solely by the introduction of damaging evidence. Coconspirators and codefendants have been accorded no special standing.'

"The following language is also found in Alderman, supra, in 394 U.S. at 174, 89 S.Ct. at 966, 22 L.Ed.2d at 186:

" 'We adhere to these cases and to the general rule that Fourth Amendment rights are personal rights which, like some other constitutional rights, may not be vicariously asserted. [citations omitted] * * * There is no necessity to exclude evidence against one defendant in order to protect the rights of another. No rights of the victim of an illegal seach are at stake and the evidence is offered against some other party. The victim can and very probably will

object for himself when and if it becomes important for him to do so.' "

■ The second proposition contends that the trial court erred in admitting statements and testimony of minor accomplices. Because their testimony goes "as an admission against interest," we need only observe that defendant has no standing to object to accomplices' statements and testimony which may tend to self-incriminate them. In the syllabus of Hill v. State, supra, we stated:

"The Fifth Amendment rights against self-incrimination, as protected by Miranda, are personal in nature and may not be vicariously asserted.

"A defendant lacks standing to challenge the testimony of a co-participant who implicated a defendant in a burglary of a grocery store on the grounds that such testimony was unconstitutionally tainted by illegality of co-participant's prior confession."

■■ The third proposition asserts that the testimony of the accomplices was not sufficiently corroborated by other evidence connecting defendant with the commission of the crime of Second Degree Burglary. We disagree. The record does not reflect that Richard Hart was an accomplice because he neither conspired nor participated in the offense. In McCormick v. State, Okl.Cr., 464 P.2d 942, we stated in the Syllabus:

"The test by which to determine whether a witness is an accomplice, where his testimony must be corroborated, is to ascertain whether a witness could be indicted for the offense for which the accused is being tried."

We further observe that the testimony of Officer Coach corroborates the accomplice's testimony by placing Gourd's vehicle near the scene of the burglary. It further developed that this was the same vehicle in which the defendant was arrested a short time after the burglary. In Nation v.

1. Alderman v. United States, 394 U.S. 165, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969).

State, Okl.Cr., 478 P.2d 974, we stated in the Syllabus:

"Court will take strongest view of corroborating testimony that testimony warrants before guilty verdict will be set aside.

"There is failure to corroborate accomplice testimony only if there is no evidence legitimately having that effect.

"If the accomplice is corroborated as to one material fact, or facts, by independent evidence tending to connect the defendant with the commission of the crime, the jury may from that infer that he speaks the truth as to all."

■ The fourth proposition contends that the defendant was denied an adequate and speedy trial as provided by the Sixth Amendment. We are of the opinion that this proposition is likewise without merit. The record reflects that defendant was charged by information and was taken before the examining magistrate on August 7, 1972. The cause was thereafter continued on four separate occasions to give defendant time in which to secure an attorney. On November 8, 1972, defendant appeared with his court-appointed attorney and a preliminary hearing was conducted. The jury trial was held on March 9, 1973. Defendant first raised the issue of denial of a speedy trial immediately before trial by orally moving the court to dismiss the charge. In overruling defendant's motion, the trial court stated:

"This is the first trial since he has been incarcerated." (Tr. 13)

In Wilson v. District Court of Oklahoma City, Okl.Cr., 471 P.2d 939, we stated in the Syllabus:

"A trial court in ruling upon a motion to quash or set aside an information based on denial of a speedy trial should consider the length of the delay, the cause of the delay, waiver by the accused and prejudice to the accused because of the delay. If the evidence shows accused has suffered such prejudice by virtue of the delay as to render a fair trial doubt-

ful, the criminal charge should be dismissed with prejudice."

Considering that defendant was afforded a trial on the first jury docket after his preliminary hearing and further, that defendant has totally failed to show how he was prejudiced because of delay, we are of the opinion that this proposition is without merit.

■ The fifth proposition contends that the trial court erred in allowing the State to endorse additional witnesses the day before trial. The record reflects that defendant acknowledged that he received notice of the endorsement of additional witnesses the day prior to trial and that on the day of trial, the trial court gave defendant an opportunity to interview the witnesses prior to the trial. (Tr. 15) The record does not reflect that defendant withdrew his announcement of ready for trial nor did defendant file a motion for postponement or continuance. In Williams v. State, Okl.Cr., 447 P.2d 456, we stated in the first Syllabus:

"The trial court in the exercise of judicial discretion may permit the name of a witness to be endorsed upon the information even after the trial has commenced. If the defendant's counsel is surprised at such action and such endorsement of an additional witness requires a production of further testimony by defendant, he should withdraw his announcement of ready for trial, and file a motion for a postponement or a continuance, in which he should set out the facts constituting such surprise, and the other evidence if any, he could produce to rebut the testimony of such additional witness if the trial of the case were continued. Where he fails to do this, the error, if any, is waived."

■ The sixth proposition asserts that the trial court erred in admitting State's Exhibit 1, the beer, in that it was not properly identified and further, that the chain of custody was not sufficiently established. We first observe that Wayne Smith testified that he "believed" that he had seen

the exhibit before and that it was "the fruit of the burglary." Norma Gourd testified that "I think it's the same beer." (Tr. 52) Richard Hart testified that it was possible that this was the same beer. Kenneth Coach testified that State's Exhibit 1 was the same beer which he recovered from Gourd's refrigerator on the night in question. Chief Morgan testified that State's Exhibit 1 was returned to the police station by officers and kept in his custody until preliminary hearing and trial. In Gouard v. State, Okl.Cr., 335 P.2d 920, we stated in the Syllabus:

> "Before physical object allegedly taken in commission of burglary is admitted in evidence, it must be sufficiently connected with the crime itself by proper identification. However, it is not necessary that such identification should positively and indisputably describe such article. If it is sufficiently described to justify its admission in evidence, the lack of positive identification goes to the weight of such evidence rather than its admissibility."

We are of the opinion that State's Exhibit 1 was sufficiently described to justify its admission into evidence and further, that the chain of custody was sufficiently established.

The seventh proposition contends that the trial court erred in failing to instruct the jury on the necessity of having the accomplices' testimony corroborated. Although defendant did not request an instruction as to accomplices, we are of the opinion that the trial court should have so instructed; however, in view of the overwhelming evidence of defendant's guilt, we do not believe the failure amounts to reversible error. See Stidham v. State, Okl. Cr., 507 P.2d 1312. We further observe that the accomplices' testimony was in fact sufficiently corroborated.

The final proposition contends that the trial court erred in failing to instruct on the lesser included crime of Petty Larceny. Although this proposition is improperly before this Court, in that the

same is not supported by the citation of authority, we have carefully considered the proposition and are of the opinion that it is without merit. Defendant did not request an instruction on Petty Larceny nor did the evidence warrant the giving of such instruction by the court.

The judgment and sentence is affirmed.

BLISS, P. J., and BRETT, J., concur.