Thomas Lee PACK, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–74–647.

Court of Criminal Appeals of Oklahoma.

Dec. 17, 1974.

As Corrected Dec. 26, 1974.

Rehearing Denied Dec. 31, 1974.

James W. Fransein, Williams, Fransein & Savage, Tulsa, for appellant.

Larry Derryberry, Atty. Gen., James L. Swartz, Asst. Atty. Gen., Jeannette Haag, Legal Intern, for appellee.

## OPINION

BLISS, Presiding Judge:

The appellant, Thomas Lee Pack, hereinafter referred to as defendant, was charged, tried and convicted in the District Court of Tulsa County, Oklahoma of the crime of Burglary in the Second Degree. Punishment was assessed at not less than two (2) and no more than four (4) years imprisonment in the State Penitentiary. From a judgment and sentence in conformance with said verdict defendant appeals.

Briefly stated the facts adduced at trial are as follows: Lloyd K. Stephens testified that he was living at 2404 East 19th Street in Tulsa, Oklahoma, during May, 1973. Stephens and his wife left their home locked and unoccupied on May 25 through May 29, 1973, while on a vacation trip. The Stephens returned on May 29, 1973, and found that their home had been forcibly entered. Upon investigation it was ascertained that numerous household and personal articles were missing, including an Amana radar range Model RR–2, Serial Number S18369623, and a Frost Queen freezer. Stephens identified State's Exhibit No. 1, the radar range, as having the same serial number and further identified it by a mark on the door handle.

David Lee Young testified that during the weekend of May 25 through May 29, he and a Russell Wood broke into an unoccupied residence at 2404 East 19th Street in Tulsa. Both investigated the contents of the home and Young determined that a return trip would be necessary. Both left the home, unlocking the garage door and Young was taken to the residence of Gary and Linda Alsbrook where he also lived. Young then called the defendant to try to find a van. The defendant, unable to se-

cure a van, met Young at the Alsbrook residence and they drove to the East 19th location in the defendant's white Riviera. Upon arrival in the area, they stole a van, drove to the residence, opened the garage door and proceeded to remove numerous articles including a freezer and a radar range. They then drove to the residence of the defendant's mother where Young assisted the defendant in installing the freezer. The radar range was then transferred into the trunk of the defendant's white Riviera. After the van was disposed of they both returned to the Alsbrook residence where they discussed selling the stolen articles. The defendant at that time paid Young $200. Gary Alsbrook was present at this conversation and viewed the radar range in the trunk of the defendant's car. Young identified State's Exhibit No. 1 as being similar to the stolen radar range. Young further stated that he was presently charged with a crime, but had been promised nothing in exchange for his testimony. Cross-examination of this witness established that he hoped his testimony would assist him in some way in a pending charge. Young further stated that he went to defendant's apartment sometime in July and he was aware that the radar range was still in the defendant's possession.

Gary Alsbrook then testified that he knew both David Young and the defendant and that in May of 1973 Young was living with him and his wife. Alsbrook recalled that in May, Young left the residence one evening and returned about an hour later. Young then made a call to someone and was subsequently picked up in a white Riviera. Around midnight the white Riviera appeared and Young and the defendant entered the Alsbrook home. Young stated that they had a radar range and offered to sell it to Alsbrook. The witness observed what appeared to be State's Exhibit No. 1 in the trunk of the white Riviera, but declined to buy same due to financial difficulty. Alsbrook further stated that he witnessed the defendant give Young some

money. On cross-examination the witness admitted that he was presently charged with second degree burglary and hoped to receive some leniency as a result of his testimony.

Tulsa police officer Jerry McMillen then identified State Exhibit No. 1 as the radar range that he saw on July 25, 1973, at the defendant's residence while serving a search warrant. Defense counsel at this point stipulated that the serial number appearing on State's Exhibit No. 1 matched that given by Stephens. Exhibit No. 1 was then admitted into evidence and the State rested.

The defendant took the stand and testified that David Young approached him during the summer of 1973 and asked if he wanted to purchase an Amana radar range. They subsequently went to the Alsbrook residence where he bought the range in question for $200 or $250. He denied that Alsbrook ever looked into his car trunk on that occasion.

Charles Reynolds then testified that during the summer of 1973, while at a private club, he overheard a conversation between a David Young and the defendant wherein Young offered to sell "some kind of oven" to the defendant. Both subsequently left the club.

The defendant's wife, Sherry Pack, then testified that the defendant brought an Amana microwave oven home one night around the 1st of June and stated that he got it from David Young. The defendant then rested.

▉ Defendant's first proposition in error urges that a search warrant issued for and the search of defendant's mother's home in an effort to find a freezer was unconstitutional. After examining the record it is our opinion that for purposes of this appeal the proposition is without merit since no evidence obtained from the search was introduced and no information garnered from said search was in any way used against the defendant. It is therefore unnecessary for us to determine the validi-

**534**

ty of the search or the sufficiency of the affidavit filed in support of the issuance of the warrant.

■ The defendant next argues that the search warrant issued for purposes of obtaining the Amana radar range from the apartment of the defendant was insufficient since the range was improperly identified both in the affidavit supporting the warrant and the warrant itself, and therefore the introduction of the range into evidence should have been suppressed. The record reflects that the range was described both in the affidavit and the warrant as "one gray and chrome Amana radar range, model RR2, serial number S00018369623." At trial both Lloyd Stephens, the owner of said range, and Officer McMillen, examined State's Exhibit 1 and stated that the serial number found thereon was S18369623. It is therefore our opinion that the warrant in question contained a specific description of the property to be seized both as to color, brand name and serial number. The omission of the three zeroes prefixing the serial number as stated by the owner and the officer is not fatal and in no way violates the Fourth Amendment rights of the defendant.

■ The defendant's third proposition contends that the evidence presented by the State at the preliminary hearing was insufficient as a matter of law to support the State's case in chief, and that the appellate procedure followed by the State in appealing the magistrate's adverse ruling was not consistent with the laws of the State of Oklahoma. With this contention we again disagree.

The record reflects that at the close of the preliminary hearing the defendant's demurrer to the evidence was sustained by the magistrate. The State immediately and properly filed its application to appeal from the adverse ruling of the magistrate pursuant to Rule 6 of the rules of the Court of Criminal Appeals. See State ex rel. Fallis v. Caldwell, Okl.Cr., 498 P.2d 426. After an appellate hearing before the assigned District Judge the adverse ruling

of the magistrate was reversed and the defendant was subsequently bound over for trial. The procedure followed in the instant case was consistent with Rule 6 and, therefore, proper.

■ A thorough reading of the transcript of the preliminary hearing reveals sufficient evidence to show that the crime charged had been committed and that there was reason to believe the defendant had committed same. Defendant's third proposition and his further contention that the trial court erred in overruling his motion to suppress and motion to quash at the District Court level are without merit.

■ Defendant's fifth proposition essentially argues that Gary Alsbrook was an accomplice and, therefore, his testimony could not be used to corroborate the testimony of the admitted accomplice, David Young. In the recent case of Plummer v. State, Okl.Cr., 515 P.2d 256, this Court held that a witness who was present in a house when the defendant brought in stolen cases of beer was not an accomplice since he neither conspired nor participated in the burglary of the bar charged in the information. This Court has held on numerous occasions that a test to determine whether a witness is an accomplice whose testimony must be corroborated is whether said witness could be indicted for the offense for which the accused is being tried. McCormick v. State, Okl.Cr., 464 P.2d 942. Gary Alsbrook was not an accomplice. His testimony and the discovery of the stolen radar range in the defendant's apartment are sufficient to corroborate the testimony of the admitted accomplice, David Young.

■ The defendant next contends that the trial court erred in failing to instruct the jury that Gary Alsbrook was an accomplice as a matter of law and in failing to submit defendant's Requested Instruction No. 1 to the jury. As stated above, Gary Alsbrook was not an accomplice and contrary instructions would have been erroneous.

Defendant's requested instruction states as follows:

"You are instructed that the testimony of a witness who has testified to having been an accomplice in the commission of any offense called to your attention by the evidence, ought to be received with suspicion, and with the very greatest care and caution, and ought not be passed upon by the jury under the same rules governing other and apparently creditable witnesses."

The accomplice instructions submitted by the trial court are as follows:

"INSTRUCTION NUMBER 6: You are instructed that an 'accomplice' is one who, with criminal intent, is concerned with others in the commission of a crime, either by being present participating in it, or, not being present, by aiding and abetting it, or by having advised and encouraged its commission, though not present when it is committed."

"INSTRUCTION NUMBER 7: You are instructed that a conviction cannot be had upon the testimony of an accomplice or accomplices, unless they be corroborated by such other evidence as tends to connect the defendant with the commission of the offense, and the corroboration is not sufficient if it merely shows the commission of the offense or the circumstances thereof.

In this connection, you are further instructed that the testimony of one accomplice is not corroboration for the testimony of another accomplice."

"INSTRUCTION NUMBER 8: You are instructed that in this case the witness, David Young, who testified herein, is an admitted accomplice, and for that reason you cannot convict the defendant upon the testimony of said witness unless you find that other evidence in the case than the testimony of the witness connects the defendant, Thomas Lee Pack, with the commission of the offense.

You are further instructed that such corroborating evidence may be circumstan-

tial, and it is not necessary that the required corroborative evidence cover every material point testified to by the said accomplice, and it is sufficient if you find that the evidence of David Young is corroborated in some material point which tends to connect the defendant, Thomas Lee Pack, with the commission of the offense."

"INSTRUCTION NUMBER 10: Counsel in this case were permitted by the Court to ask the witnesses if they had ever been convicted of a crime.

You are instructed that under the law of our state such a question is a proper one, but you are further instructed that under the law it can be considered by you only insofar as it affects the credibility, if any, of the witness; and you must consider it, if you consider it at all, in passing upon the credibility of the witness and for no other purpose. This, however, is for you to determine, and you may totally disregard the question and answer if you see fit."

It is apparent that the trial court accurately and fully instructed the jury as to the Oklahoma law concerning the testimony of accomplices and the required corroboration. The trial court's refusal to submit the requested instruction does not amount to an abuse of discretion, and defendant's contention is without merit.

The defendant's next proposition urges that the opening statement of the prosecuting attorney was improper since he failed to state that the defendant had entered a plea of not guilty. However, this contention is without merit since a reading of the transcript of the State's opening statement reflects that the defendant's plea of not guilty was twice brought to the attention of the jury.

Defendant next argues that the prosecuting attorney during his closing argument made improper remarks which tended to create bias and prejudice towards the defendant in the eyes of the jury. We disagree. Although the record reflects that the trial was a spirited adversary proceed-

**536** 

ing, we do not find that the arguments of the prosecuting attorney were improper.

██ The defendant next contends that the punishment assessed was excessive due to bias and prejudice on the part of the jury arising out of improper statements made by the prosecuting attorney during the trial and during closing argument. As stated above, the remarks by the prosecutor during closing argument were not improper. The defendant, however, urges that the prosecutor during trial inferred that defendant was a "fence" when defense witness Charles Reynolds was asked the following:

"Q. Do you know if Mr. Pack ever bought other things from Mr. Young?"

The record reflects that the defense counsel immediately objected to the question and that the objection was sustained. Defense counsel did not request that the jury be admonished to disregard the question. It is the opinion of this Court that, in light of the overwhelming evidence of guilt, the defendant's sentence of two (2) to four (4) years in the state penitentiary was not excessive, since said indeterminate sentence was well within the limits prescribed by law.

██ The defendant's last proposition in error asserts that the rights of the defendant were prejudiced when a member of the jury panel presented to other panel members a photo copy of the Oklahoma statutes concerning "good time". After both the State and the defendant had waived their remaining peremptory challenges and the jury had been sworn, defense counsel made a formal motion to the trial court to quash the entire jury panel for the reason that there had been a distribution of a copy of the good time statute. The trial court overruled the motion stating as follows:

"THE COURT: The court voir dired the jurors, and none of those sitting in this case have indicated that they had any knowledge of this particular item. And the court will overrule that motion and allow an exception."

The defendant submits no evidence that any of the twelve (12) jurors saw the alleged item or had any knowledge of the incident. We cannot say that the trial court abused its discretion in overruling defendant's motion to quash the entire jury panel.

For the reasons set out above we find that the defendant has been deprived of no substantial rights. The judgment and sentence appealed from is, accordingly, affirmed.

BRETT, J., concurs in results.

BUSSEY, J., concurs.

